# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:18CV123

| | |
|---|---|
| LINDA STURDIVANT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ARC OF HAYWOOD COUNTY, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on Defendant's Motions to Dismiss (# 4, 7) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, this Court recommends that Defendant's Motions to Dismiss be GRANTED.

## I. Procedural Background

On September 21, 2017, Plaintiff initiated this action in the General Court of Justice, Superior Court Division for Guilford County, North Carolina. Defendant removed the action based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, to the United States District Court for the Middle District of North Carolina ("Middle District").[1]

---

[1] The action was removed based on federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); see also In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 584 (4th Cir. 2006) ("[F]ederal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law[.]") (citing Louisville &

On October 25, 2017, Defendant filed a Motion to Change Venue (# 2) in the Middle District, seeking to transfer the case to the United States District Court for the Western District of North Carolina, Asheville Division. On May 4, 2018, the presiding District Judge from the Middle District, the Honorable Loretta C. Biggs, United States District Judge, granted Defendant's motion. See (# 24).

The action was transferred to the Western District of North Carolina, Asheville Division. The pending Motions to Dismiss were referred to the undersigned to render a Memorandum and Recommendation.

## II.     Factual Background[2][3]

The facts, as viewed in a light most favorable to Plaintiff, are the following: Plaintiff, a "Black" female, was employed by Defendant during all relevant times. Compl. (# 1) Ex. B ¶ 3. Plaintiff worked as Services Director until she was terminated by Defendant around April 2016. Id.

Plaintiff performed well, but she was not allowed the same training as her Caucasian coworkers in 2015 and 2016. Id. ¶ 4. Plaintiff repeatedly reported her concerns regarding racial and gender discrimination and hostile work environment to Defendant's management. Id. at 5. Plaintiff's concerns were not addressed, and she was forced to

---

Nashville R.R. Co. v. Mottley, 211 U.S 149, 152 (1908)).

[2] When evaluating a motion to dismiss, the Court must accept the plaintiff's alleged facts as true and view them in a light most favorable to the plaintiff. See Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). In this case, the facts are derived from Plaintiff's Complaint. See (# 1) Ex. B.

[3] In Plaintiff's Complaint, she refers to "Defendants." See Comp. (# 1) Ex. B. ¶¶ 12-14, 21. There is, however, only one Defendant in this case: Arc of Haywood County, Inc. See Compl. (# 1) Ex. B.

endure ongoing verbal intimidation from her supervisor and attempts to impugn her abilities before her subordinates. Id.

After Plaintiff reported her concerns, she was subjected to a retaliatory and hostile work environment. Id. ¶ 6. Tensions in the workplace increased between the parties, and Plaintiff was harassed and retaliated against by her manager. Id. In particular, there was reduced communication about business matters, a hostile tone of voice when communicating with Plaintiff, and additional scrutiny of Plaintiff's performance. Id.

After Plaintiff reported these concerns, she was even more isolated in communication and opportunities than she had been prior to reporting. Id. ¶ 7. In fact, Plaintiff was confronted by her management team in an aggressive manner regarding her failure to attend meetings that she was not even aware of. Id. ¶ 8. Management accused Plaintiff of insubordination when she was working to the best of her abilities with the information she had. Id. Caucasian managers and male managers engaged in insubordinate behavior, yet they received no repercussions or disciplinary actions from Defendant. Id.

Several of Plaintiff's duties as Service Director were taken from her by her supervisor and given to a subordinate. Id. ¶ 9. Plaintiff was confronted by her supervisor about statements made in an official report. Id. ¶ 10. Plaintiff failed to alter her statement, and her supervisor threatened to terminate her employment. Id. Plaintiff failed to alter the statement because the statement would not have been accurate and truthful. Id. The next day, Plaintiff was advised that she would no longer be employed by Defendant. Id. ¶ 11.

When Plaintiff brought her concerns to management, the management team diminished the validity of her concerns and suggested she was the source of the problem.

3

Id. ¶ 17.  During her employment, Plaintiff worked to the best of her abilities and with the best interest of Defendant in mind.  Id. ¶ 12.  Caucasian managers and male managers were given more training opportunities than Plaintiff, and they received more support from the Executive Director than Plaintiff received.  Id.  Male managers were not subject to the verbal assaults and intimidations Plaintiff and other female managers were subjected to.  Id.  Defendant's conduct violates public policy.  Id. ¶ 13.

Within 180 days of the last discriminatory acts of Defendant, Plaintiff filed a written charge with the Equal Employment Opportunity Commission ("EEOC"), which charged Defendant with racial and gender discrimination, a hostile atmosphere, and retaliation.  Id. ¶ 14.  Following its investigation, the EEOC issued a right to sue letter.  Id.  Plaintiff has elected to institute a private lawsuit, which is being filed within 90 days after receipt of the right to sue letter.  Id.

Plaintiff has been injured in an amount in excess of $10,000, which represents lost wages and benefits and emotional distress.  Id. ¶ 15.  Defendant's conduct was the direct and proximate cause of Plaintiff's emotional distress.  Id. ¶ 18.  Plaintiff sought medical treatment for the stress.  Id.  The discrimination and retaliation were extremely stressful to Plaintiff, and they rose to the level that a reasonable person would deem them outrageous.  Id. ¶ 15.

Defendant's outrageous conduct began as deliberate, unsolicited, and unwelcome verbal assaults on Plaintiff.  Id. ¶ 19.  The conduct involved intense scrutiny of Plaintiff's performance that was not done to male or Caucasian employees.  Id.  The conduct was done either with the intention of causing Plaintiff's emotional distress or with reckless

4

indifference to the likelihood that emotional distress was likely to occur. Id.

## III. Legal Standards

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). Where a defendant contends that a complaint fails to allege facts upon which the court can base subject matter jurisdiction, the court, like ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), assumes as true the factual allegations in the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

If, on the other hand, a defendant contends that the jurisdictional allegations contained in the complaint are false, the court may go beyond the allegations of the complaint and conduct an evidentiary hearing to determine if there are facts to support the court's exercise of jurisdiction over the dispute. Id. The burden of establishing subject matter jurisdiction on a motion to dismiss rests with the party asserting jurisdiction. Id.; Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

### B. Fed. R. Civ. P. 12(b)(6)

The central issue for resolving a Federal Rule of Civil Procedure 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. Although a court accepts well-pled facts as true, it is

5

not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### III. Discussion[4]

---

[4] The Court has gone to great lengths to state Plaintiff's allegations as they relate to each individual claim. The Court notes that Plaintiff's counsel has not properly designated her claims in a manner

### A. First Motion to Dismiss (# 4)

#### 1. Plaintiff's claim for wrongful discharge in violation of public policy fails.

Defendant initially argues that Plaintiff has not alleged a valid claim for wrongful discharge in violation of public policy. Def.'s Mem. Supp. (# 5) at 3-5. In particular, Defendant contends that Plaintiff failed to identify the requisite public policy. Id. Defendant concludes that to the extent such a claim has been alleged, it must be dismissed. Id.

North Carolina is an at-will employment state, and without a contractual agreement to the contrary, the relationship between the employer and employee is presumed to be terminated by either party at any time. Wilkes v. Argueta, No. 1:16-CV-260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (quoting Kurtzman v. Applied Analytical Indus., Inc., 493 S.E.2d 420, 422 (N.C. 1997)). One exception to the at-will employment doctrine is the wrongful discharge in violation of North Carolina public policy. Id. (citing Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 447 (N.C. 1989)). In North Carolina, the public-policy exception to the at-will doctrine is a narrow exception. Howard v. College of the Albemarle, 262 F. Supp. 3d 322, 336 (E.D.N.C. Mar. 27, 2017) (citing Whitt v. Harris Teeter, Inc., 614 S.E.2d 531, 532 (N.C. 2005) (per curiam)); White v. Rite Aid of N. Carolina, Inc., No. 5:15-CV-309-D, 2015 WL 7429996, at *2 (E.D.N.C. Nov. 20, 2015) (listing cases).

---

that can be relied upon. For example, Plaintiff's counsel has only designated two causes of action: (1) "First Cause Of Action: Title VII of the Civil Rights Act" and (2) "Second Cause Of Action: Emotional Distress". As noted, Plaintiff's allegations implicate more than two causes of action.

"To state a claim for wrongful discharge in violation of North Carolina public policy, a plaintiff must plead plausible facts that, if later proved, would show that dismissal occurred for a reason that violates public policy." Parker v. Curtiss-Wright Corp., No. 3:17-CV-00639-MOC-DCK, 2018 WL 1652098, at *7 (W.D.N.C. April 5, 2018) (citing Imes v. City of Asheville, 594 S.E.2d 397 (N.C. Ct. App. 2004)). Plaintiff bears the burden of proving that he was dismissed for a reason that violates public policy. Robinson v. Durham Public Schools Bd. of Educ., No. 1:13CV652, 2014 WL 3894368, at *6 (M.D.N.C. Aug. 7, 2017) (citing Salter v. E & J Healthcare, Inc., 575 S.E.2d 46, 51 (N.C. Ct. App. 2003)).

In pertinent part, Plaintiff alleges that Defendant's conduct violates the public policy of the State of North Carolina. See Compl. (# 1) Ex. B ¶ 13. Plaintiff, however, fails to identify specifically which public policy was violated.

Plaintiff's allegations are not sufficient because the North Carolina Supreme Court requires a plaintiff alleging wrongful discharge in violation of North Carolina public policy to assert "specific conduct by a defendant that violated a specific expression of North Carolina public policy" set forth in a specific North Carolina statute or a specific provision of the North Carolina Constitution. Howard, 262 F. Supp. 3d at 337 (quoting Considine v. Compass Grp. USA, Inc., 551 S.E.2d 179, 184 (N.C. Ct. App. 2001)). Accordingly, Plaintiff's claim for wrongful discharge in violation of public policy must fail.

### 2. To the extent Plaintiff is bringing her public policy claim as a Title VII action, it also fails.

Defendant argues that, to the extent Plaintiff is raising her public policy claim as a

8

Title VII claim, it must fail. Def.'s Mem. Supp. (# 5) at 5. A claim for wrongful discharge in violation of pubic policy, as set forth in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat §§ 143-422.1 et seq., rises and falls with its counterpart under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").[5] Tran v. Novo Nordisk Pharm. Indus., Inc., Nos. 5:14-CV-429-FL, 5:14-CV-254-FL, 2016 WL 1559137, at *11 (E.D.N.C. Apr. 18, 2016) (citing Moss v. Steele Rubber Prods., Inc., No. 5:07CV76, 2010 WL 1380364, at *7 (W.D.N.C. Mar. 29, 2010)). Therefore, to the extent Plaintiff is bringing her public policy claim as a Title VII action, it should be dismissed.

### 3. Plaintiff fails to state a claim for intentional infliction of emotional distress ("IIED").

Defendant next argues that Plaintiff has failed to allege a viable claim for IIED. Pl.'s Mem. Supp. (# 5) at 5-7. In particular, Defendant contends: (1) Plaintiff has alleged only conclusory allegations; and (2) Plaintiff has failed to sufficiently allege extreme and outrageous conduct. Id. at 6.

"To state a claim for IIED in North Carolina, a plaintiff must allege (a) extreme and outrageous conduct, (b) intended to cause severe emotional distress, (c) that did indeed cause severe emotional distress." Mosk v. Gaston Cty. No. 3:17-CV-00177-RJC-DSC,

---

[5] Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 298 (4th Cir. 2015) (en banc) (setting forth the elements of a Title VII hostile work environment claim based on race). In addition, Title VII precludes an employer from retaliating against an employee based on the employee having filed an earlier Charge of Discrimination. 42 U.S.C. § 2000e-3(a); see DeMasters v. Carilion Clinic, 796 F.3d 409, 415-16 (4th Cir. 2015).

2018 WL 1566339, at *8 (W.D.N.C. Mar. 30, 2018) (citing Holloway v. Wachovia Bank & Trust Co., 452 S.E.2d 233, 240 (N.C. 1994)).

Conduct is deemed to be extreme and outrageous when it exceeds what is tolerated by a decent society. Cooper v. Smithfield Packing Co., Inc., 724 F. App'x 197, 201 (4th Cir. 2018) (citing Shreve v. Duke Power Co., 354 S.E.2d 357, 359 (N.C. Ct. App. 1987)); see Waddle v. Sparks, 414 S.E.2d 22, 27-28 (N.C. 1992) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.") (emphasis omitted). Determining whether conduct is extreme and outrageous is initially a question of law for the court. Simmons v. Chemol Corp., 528 S.E.2d 368, 372 (N.C. Ct. App. 2000). A plaintiff must plead such extreme and outrageous conduct with specificity. Alexander v. Diversified Ace Servs. II, AJV, No. 1:11CV725, 2014 WL 502496, at *14 (M.D.N.C. Feb. 7, 2014).

North Carolina courts will rarely find that conduct is sufficiently extreme or outrageous in an employment setting. Lamb v. Lowe's Companies, Inc., No. 5:17-CV00028-RJC-DSC, 2018 WL 1185508, at *3 (W.D.N.C. Mar. 7, 2018) (citing Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C., 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002)). In fact, IIED claims that have been successful in the employment context have generally been characterized by "sexual advances, obscene language, and inappropriate touching." Id. (quoting Gauthier v. Shaw Grp., Inc., No. 3:12-CV-00274-GCM, 2012 WL 6043012, at *7 (W.D.N.C. 2012)).

In this case, in pertinent part, Plaintiff alleges:

10

> That the Defendant's outrageous conduct started in the form of deliberate, unsolicited, and unwelcome verbal assaults upon Plaintiff. The conduct extended to intense scrutiny of her performance that was not placed on male or Caucasian employees. Said conduct was either done with the intention of causing the Plaintiff emotional distress or was done with reckless indifference to the likelihood that emotional distress would result.

Compl. (# 1) Ex. B. ¶ 19. Plaintiff further alleges that "the Defendant's conduct was the direct and proximate cause of emotional distress to Plaintiff. As a result, she sought medical treatment for the stress." Id. ¶ 18.

"The discrimination and retaliation were very stressful to Plaintiff and rose to the level that a reasonable person would consider outrageous." Id. ¶ 21. "The conduct of the Defendant, as herein set out, constitutes the tort of intentional . . . infliction of emotional distress." Id. ¶ 20.

Initially, the Court finds that Plaintiff's conclusory allegations fail to sufficiently allege an IIED claim. See Thomas v. Goodwill Industries of the Southern Piedmont, Inc., No. 3:13-CV-00005-MOC-DCK, 2013 WL 3816614, at *2 (W.D.N.C. July 22, 2013) (holding that the plaintiff's assertions failed to state an IIED claim because they were conclusory and not supported by allegations of plausible facts). Moreover, the Court finds that Plaintiff has failed to allege facts that are sufficiently "extreme and outrageous." See Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635-36 (M.D.N.C. 2000) (holding that a hostile work environment and discharge in retaliation for exercising Title VII rights, in addition to other conduct, was not extreme and outrageous); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004) (holding that an alleged "campaign of sexual harassment" followed by discharge in retaliation for complaining about the sexual harassment was not

11

extreme and outrageous); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810 (M.D.N.C. 1999) (refusing to find extreme and outrageous conduct when employer told the plaintiff he was too old and sick and needed to retire).  For both these reasons, Plaintiff's IIED claim should be dismissed.

### 4. Plaintiff fails to state a claim for negligent infliction of emotional distress (NIED).

Finally, Defendant argues that Plaintiff's "passing reference" to a NIED claim warrants summary dismissal.  Def.'s Mem. Supp. (# 5) at 6.  In particular, Defendant contends that Plaintiff has failed to state any of the necessary elements for a NIED claim. Id.

The elements of a NIED claim are: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that the conduct would cause severe emotional distress; and (3) the conduct did, in fact, cause severe emotional distress.[6]  Barbier v. Durham Cty. Bd. of Educ., 225 F. Supp. 2d 617, 628 (M.D.N.C 2002) (citing McAllister v. Ha, 496 S.E.2d 577, 582-83 (N.C. 1998)).

In the instant case, in pertinent part, Plaintiff alleges that "[t]he conduct of the Defendant, as herein set out, constitutes the tort of . . . negligent infliction of emotional distress."  Compl. (# 1) Ex. B ¶ 20.  "That the Defendant's conduct was the direct and proximate cause of emotional distress to Plaintiff.  As a result, she sought medical treatment for the stress."  Id. ¶ 18.  "That as a direct and proximate result of the Defendants'

---

[6] The definition of "severe emotional distress" set forth in Johnson v. Ruark Obstetrics and Gynecology Assocs., 395 S.E.2d 85, 97 (N.C. 1990), also applies to IIED claims.  Ramsey v. Harman, 661 S.E.2d 924, 926-27 (N.C. Ct. App. 2008).

12

[sic] conduct, Plaintiff has suffered damages in excess of $10,000.00 as lost wages, benefits, medical expenses, and emotional distress." Id. ¶ 21.

The Court finds that Plaintiff's conclusory allegations fail to sufficiently allege an NIED claim. For example, the first element of a NIED claim is lacking. In particular, Plaintiff summarily concludes that Defendant's conduct constitutes a claim for NIED. See id. ¶ 20. Also, with respect to the second element, Plaintiff fails to sufficiently allege that it was reasonably foreseeable to Defendant that its conduct would cause severe emotional distress. See Compl. (# 1) Ex. B. Consequently, Plaintiff's NIED claim should be dismissed.

### B. Second Motion to Dismiss (# 7)

#### 1. Plaintiff fails to identify an adverse employment action to support a Title VII retaliation claim.

Defendant initially argues that Plaintiff has failed to identify the necessary element of an adverse employment action to support a claim for Title VII retaliation. Def.'s Mem. Supp. (# 8) at 3-5. Defendant contends that Plaintiff's allegations fall woefully short of meeting even the threshold requirement for an adverse employment action. Id. at 4-5. Defendant concludes that Plaintiff's Title VII retaliation claim must be dismissed because the Complaint fails to allege facts sufficient to plausibly state a legally cognizable claim. Id. at 5.

"The elements of a prima facie retaliation claim under Title VII are: (1) engagement
13

in protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)); accord Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).

Under the second element, an "adverse employment action," is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). An isolated instance may not be cognizable as an adverse action, but when viewed cumulatively, it may rise to the level of being an unlawful employment practice when it amounts to a hostile work environment. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002); see Mack v. S.C. Dep't of Transp., No. CA 3:12-2960-MDL-KDW, 2015 WL 1297836, at *18 (D.S.C. Jan. 28, 2015) (the plaintiff's move to a cubicle did not qualify as an adverse employment action), report and recommendation adopted, No. 3:12-CV-2960-MGL-2015 WL 1297876 (D.S.C. Mar. 23, 2015).

> In the instant case, in pertinent part, Plaintiff alleges that she was
>
> harassed and retaliated against by her manager in the form of reduced communication regarding business matters, hostile tone of voice when communicating with Plaintiff, and extra scrutiny of her performance compared to coworkers.

Compl. (# 1) Ex. B ¶ 6.

14

The Court finds Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene, 317 F. App'x 351 (4th Cir. 2009) (per curiam), a case from the Fourth Circuit Court of Appeals, to be persuasive.[7] In Prince-Garrison, Plaintiff appealed the district court's order dismissing her complaint, which alleged race, gender, and national origin discrimination under Title VII. Id. at 352. The Court, in pertinent part held, that "[t]he other actions complained of by [Plaintiff], such as her employer's failure to provide her with office supplies, reprimands for insubordination, meeting with supervisors, and directions to attend counseling, do not constitute adverse employment actions." Id. at 353.

In the instant case, Plaintiff's allegations that Defendant's retaliation took the form of reduced communication regarding business matters, a hostile tone of voice when communicating with Plaintiff, and extra scrutiny of Plaintiff's performance compared to coworkers, see Compl. (# 1) Ex. B. ¶ 6, fail for the same reason as the above-noted allegations in Prince-Garrison. Therefore, Plaintiff's Title VII retaliation claim should be dismissed.

### 2. To the extent Plaintiff alleges retaliation for her charge of discrimination pursuant to Title VII, Plaintiff cannot establish that she has exhausted her administrative remedies.

Finally, Defendant argues that to the extent Plaintiff alleges retaliation for her charge of discrimination under Title VII, Plaintiff cannot show she exhausted her

---

[7] The Court recognizes that Prince-Garrison is unpublished. The Fourth Circuit Court of Appeals has noted that its unpublished opinions "are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (internal quotation marks omitted); see also United States v. Adams, 39 F. App'x 36, 38 (4th Cir. 2002) ("Unpublished cases are not binding precedent in this circuit.").

administrative remedies. Def.'s Mem. Supp. (# 5) at 5-6. Defendant concludes that Plaintiff's retaliation claim, if it exists, must be dismissed. Id. at 6.

Before filing a lawsuit pursuant to Title VII, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). An "EEOC charge defines the scope of a Plaintiff's right to institute a civil lawsuit." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) (quoting Bryant v. Bell Atl. Md., Inc. 288 F.3d 124, 132 (4th Cir. 2002)). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

> In the instant case, Plaintiff alleges that she
>
> filed a charge in writing with the Equal Employment Opportunity Commission (hereinafter "EEOC") charging Defendant with racial and gender discrimination in the actions of the Defendant, the creation of a hostile atmosphere, and then with relation in its treatment of Plaintiff and the termination of her employment after she notified the Defendant regarding the racially and gender-based hostile environment.

Compl. (# 1) Ex. B. ¶ 14. Plaintiff's EEOC charge does not mention retaliation. See (# 8) Ex. B. Moreover, in the charge, Plaintiff only checked "race" and "sex" as bases for her alleged discrimination. See id. The amended charge[8] does have "retaliation" checked and alleged, but each instance has been stricken through and initialed by Plaintiff.[9] See (# 14)

---

[8] On November 21, 2017, Defendant filed a Motion to Strike (# 20) the amended charge. On May 9, 2018, this Court denied the motion. See (# 26).
[9] With respect to Plaintiff's amended charge, she argues that the EEOC acknowledged the retaliatory nature of her termination even if she did not. Pl.'s Mem. Oppos. (# 14) at 3. Plaintiff further argues that the Court should note that Plaintiff was proceeding pro se at the time. Id. The

Ex. 1.  Finally, in her Complaint, Plaintiff does not allege that her termination was related to her charge.  See Compl. (# 1) Ex. B.

In sum, this Court lacks jurisdiction over Plaintiff's Title VII retaliation claim.  See Rodgriguez v. Elon Univ., No. 1:17CV165, 2018 WL 1997987, at *8 (M.D.N.C. Apr. 27, 2018) (finding that the court lacked jurisdiction over the plaintiff's Title VII retaliation claim, which was raised for the first time in the opposition to the motion to dismiss before the court).  Consequently, Plaintiff's Title VII retaliation claim should be dismissed.

## IV. Conclusion

In light of the foregoing, the Court RECOMMENDS that Defendant's Motions to Dismiss (# 4, 7) be GRANTED.

Signed: July 19, 2018

Dennis L. Howell
United States Magistrate Judge

---

Court is not persuaded.  As noted, the amended charge has every instance of the word "retaliation" stricken through and initialed by Plaintiff.  See (# 14).

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).